Civil Action No. 1:17-cv-02577-RBJ-STV

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2021 APR 27 PM 4: 44

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

DOROTHY BARRETT-TAYLOR,

    Plaintiff,

v.

ADT SECURITY SERVICES,

    Defendant.

---

## MOTION TO RESET TRIAL

---

On March 15, 2021, Defendant and I engaged in several intense late-night phone conversations regarding the settlement of my lawsuit. Defendant stated in his Motion to Enforce Settlement, *"On March 15, 2021, at 9:09 p.m., undersigned confirmed the terms of the agreement with Plaintiff via email, noting that the parties would resolve the W-2 wages allocation issue, stating, "Dorothy, As discussed, we have agreed to settle the matter for $70,000. In the coming days, we will draft a settlement agreement and address the allocation issue you noted this evening. I appreciate your efforts today. Plaintiff did not respond contesting or otherwise disputing the email confirmation."* First and foremost, under duress, I only agreed to the offer amount to settle the case, however, that offer was contingent on allocating some or all the settlement to my Tort claim to avoid tax liability. The fact, that the term contingent is defined; subject to change, dependent on, or conditioned by something else, unequivocally means it was not a "material term." Secondly, in response to Defendant's assertion, I never received the e-mail that he is referencing, otherwise, I would have responded. I would argue, Defendant said he e-mailed me at 9:09 pm., but the fact that at that time, we were still discussing whether his client would approve 70% of the settlement toward my Tort claim.

Defendant intentionally omitted several critical statements of the case during our late-night conversation from his Motion. As such, when Defendant was asked; *"what if ADT cannot or disagree to allocate the monies toward my Tort claim, can I change my mind about settling the case, and we keep our trial dates?"* Defendant replied, *"yes, you can change your mind, and we will still go to trial."* After making this statement unbeknownst to me Defendant immediately notified the court at 9:06 pm., stating we had reached a settlement and asked that the jury trial be vacated. I would argue, contrary to

Page | 1

Defendant's statement; *"On March 15, 2021, at 9:09 p.m., undersigned confirmed the terms of the agreement with Plaintiff via email...,"* Defendant stated: *"Ordinarily after we notify the Court that there is a settlement, and we work on reaching the actual term of a settlement agreement later on if there is an issue at that point, we can bring it up with ADT's accountant. The lawsuit is not formally dismissed until you <u>agree to the terms of the settlement</u> and you received payment."* I interjected, *"yea, but we are giving up our trial date tomorrow, and they may push us back in this queue...."* Defendant replied, *"I have no ideal Dorothy, all I have for you is $70,000. So, I can't make any promises as far as the allocation goes. I just can't. So that's where it stands. If you want me to call the client I will, but I am letting you know what I think they are going to say, but I'll give them a call.* I replied, "would you?" Defendant stated, *"I don't know if they are still awake, but I'll try."* I stated, *"I'll be up."* Defendant stated, *"I need to call them Dorothy, it's 10:20..."* I replied, *"ok...I'll be up."* We ended the call at exactly 10:20 pm, and Defendant did not call me back.

Why is this important? What substantially matters is the fact, that there is no need to second-guess whether Defendant's statement; *"undersigned confirmed the terms of the agreement with Plaintiff.."* was truthful or not, as the terms of the settlement were not drafted for review until March 18, 2021. Even so, it does not negate the fact, that Defendant deceitfully provided me with inaccurate information in his desperate attempt to have the offer on file, so that in the event I changed my mind, he would consequently, used this information against me. Due to the level of respect, I have shown Defendant throughout this litigation, I had hoped he would have been truthful and informed me about the settlement enforcement claim. In fact, had Defendant been truthful, I would have ceased all conversations about settling the case. But the sheer fact, that Defendant stated: *"...all I have for you is $70,000,"* is clear and convincing evidence that the offer was the only discussion we had. In which, by the way, we ended the call at 10:20 pm., as Defendant stated he needed to contact his client in order to finalize the offer, and therefore, no "material term" was breached.

Contrary to Defendant's statement: *"Other than the potential allocation of settlement proceeds as a W-2 payment vs. a 1099 payment, Plaintiff did not express any concerns with the terms of the settlement agreement and the Court stated it considered the matter settled...,"* I had conferred with Defendant prior to filing my Motion to Reset the Trial Date, by sending Defendant an e-mail on March 30, 2021, stating I had declined the offer. Defendant and I also talked extensively after I sent the e-mail. I would further

Page | 2

argue, it is safe to say that Defendant not only misled me, but he continually misleads the court with his shenanigans to get the case settled or dismissed, which violates Rule 8.4.

**Rule 8.4. Misconduct - Colorado Rules of Professional Conduct:**
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, except that a lawyer may advise, direct, or supervise others…failure to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client unless disclosure is prohibited by Rule 1.6. Lawyers are presumed to know the rules: Will be held to a higher standard. Courts are not forgiving of dishonesty and deceit.
• Err on the side of disclosure and honesty.

I would further argue, Defendant's statement; *"On March 15, 2021, at 9:09 p.m., undersigned confirmed the terms of the agreement with Plaintiff via email…,"* undermined his credibility, as the Court asked; *"Mr. Chacon, I'm not a tax lawyer, but we do have the extremely outrageous conduct claim which I assume is a tort claim. Can it be paid on that claim and thus avoid her tax problem?"* Mr. Chacon: *"Your Honor, I've spoken preliminarily with in-house counsel with the client, and of course it's subject to approval based on final word from the accountants, and they're tax lawyers. I'm not a tax lawyer either. What I explained to Ms. Barrett-Taylor last evening was ordinarily a 50/50 split allocated between a 1099 payment and a W-2 payment is ordinarily fine. I think in this case that the client would be agreeable from a risk perspective to avoid running afoul of any IRS regulations that may apply. Adjusting that allocation to be in the range of 70 percent 1099, and the balance as a W-2 -- I'm sorry -- 70 percent 1099 and 30 percent into a W-2 payment to address that tax issue."*

The fact that the Court stated: *"you will not have to pay taxes on all of it since most of it will be tax-free,"* was because it relied solely on Defendant's statement. First and foremost, Defendant knew or should have known that I would pay taxes regardless of how the funds were allocated. But the fact, that I conferred with Defendant on March 30, 2021, in an extensive conversation, Defendant had an obligation to correct any false statement to me and the Court concerning allocation. Hypothetically, the entire settlement was allocated toward the Tort claim, Defendant intentionally misled the Court to believe that the settlement was tax-free. So, even if the terms of the settlement were discussed, the Court's transcript of March 16, 2021, proved I had suggested to Defendant that we go to trial as scheduled and then alert the court of our discussion for further guidance. **Court Transcript – Page 10, Para 2:** MS. BARRETT-TAYLOR: *"Okay. And that's another reason that I wanted to go to court because I wanted to make sure the information, he*

*was giving me was accurate, I said because I don't want to be put in a situation where the judge is going to say, well, you know what, you shouldn't have settled..."* If there was a settlement agreement, we would not be discussing the trial. But hypothetically, the 70% was tax-free, none of the other *material terms* were ever discussed, less alone agreed on, as I reviewed the settlement agreement in its totality for the first time on March 18, 2021.

With that being said, I respectfully ask the Court to reconsider its Order dated March 16, 2021, whereas it deemed the case settled because it relied solely on Defendant's statements as true. THE COURT: *In other words, you're saying that you'll allocate at least 70 percent of it to the tort claim so that she won't have to pay tax on it, and 30 percent to the wage claim. MR. CHACON: That's right, Your Honor."* In addition, I ask the Court to also consider whether Defendant's false statements constitute denial of its Motion to Enforce Settlement, based on evidence (IRS publication) attached to this Motion that contradicts Defendant's statement. The Court should also consider whether Defendant's statement was an intentional misrepresentation that may constitute some sort of sanction? Lastly, I ask that the Court grant my Motion simply because Defendant's intentional false statements innocently caused the Court to err in its decision to consider the case settled. For any or all these reasons, may my Motion to Reset the Trial Date be granted. Thank you for your time in this matter, and I look forward to a favorable response.

Respectfully submitted,

*[signature]*

Dorothy Barrett-Taylor

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, a copy of this Motion to Reset Trial Date was sent electronically to Raul.Chacon@ogletreedeakins.com & **Barbara J. Esquibel | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.** 2000 South Colorado Boulevard, Tower Three, Suite 900 | Denver, CO 80222 | barbara.esquibel@ogletree.com | www.ogletree.com

Page | 4

 

# Settlements — Taxability

If you receive proceeds from settlement of a lawsuit, you may have questions about whether you must include the proceeds in your income. This publication provides information about whether you must include the proceeds of certain kinds of settlements in your income. Whether you must include the settlement proceeds in your income depends on all the facts and circumstances in your case.

A settlement payment may consist of multiple elements that have been allocated by the parties. For example, an agreement may include allocations to back pay, emotional distress, and attorneys' fees. Generally, the IRS will not disturb an allocation if it is consistent with the substance of the settled claims.

**Personal physical injuries or physical sickness**

- If you receive a settlement for personal physical injuries or physical sickness and did not take an itemized deduction for medical expenses related to the injury or sickness in prior years, the full amount is non-taxable. Do not include the settlement proceeds in your income.

**BUT**

- If you receive a settlement for personal physical injuries or physical sickness, you must include in income that portion of the settlement that is for medical expenses you deducted in any prior year(s) to the extent the deduction(s) provided a tax benefit. If part of the proceeds is for medical expenses you paid in more than one year, you must allocate on a pro rata basis the part of the proceeds for medical expenses to each of the years you paid medical expenses. See Recoveries in Publication 525 for details on how to calculate the amount to report. The tax benefit amount should be reported as "Other Income" on line 21 of Form 1040, Schedule 1.

**Emotional distress or mental anguish**

- The proceeds you receive for emotional distress or mental anguish originating from a personal physical injury or physical sickness are treated the same as proceeds received for Personal physical injuries or physical sickness above.

**BUT**

- If the proceeds you receive for emotional distress or mental anguish do not originate from a personal physical injury or physical sickness, you must include them in your income. However, the amount you must include is reduced by: (1) amounts paid for medical expenses attributable to emotional distress or mental anguish not previously deducted and (2) previously deducted medical expenses for such distress and anguish that did not provide a tax benefit. Attach to your return a statement showing the entire settlement amount less related medical costs not previously deducted and medical costs deducted for which there was no tax benefit. The net taxable amount should be reported as "Other Income" on line 21 of Form 1040, Schedule 1.

**Lost wages or lost profits**

- If you receive a settlement in an employment-related lawsuit; for example, for unlawful discrimination or involuntary termination, the portion of the proceeds that is for lost wages (i.e., severance pay, back pay, front pay) is taxable wages and subject to the social security wage base and social security and Medicare tax rates in effect in the year paid. These proceeds are subject to employment tax withholding by the payor and should be reported by you as "Wages, salaries, tips, etc." on line 1 of Form 1040.



Publication 4345 (Rev. 9-2019) Catalog Number 38586D  Department of the Treasury  **Internal Revenue Service** www.irs.gov



# Settlements — Taxability (continued)

- If you receive a settlement for lost profits from your trade or business, the portion of the proceeds attributable to the carrying on of your trade or business is net earnings subject to self-employment tax. These proceeds are taxable and should be included in your "Business income" reported on line 21 of Form 1040, Schedule 1. These proceeds are also included on line 2 of Schedule SE (Form 1040) when figuring self-employment tax. For more information about reporting self-employment income and paying self-employment tax, see Publication 334, Tax Guide for Small Business (For Individuals Who Use Schedule C or C-EZ).

**Loss-in-value of property**

- Property settlements for loss in value of property that are less than the adjusted basis of your property are not taxable and generally do not need to be reported on your tax return. However, you must reduce your basis in the property by the amount of the settlement.

- If the property settlement exceeds your adjusted basis in the property, the excess is income. For more information, see the Instructions for Schedule D, (Form 1040) Capital Gains and Losses and the Instructions for Form 4797, Sales of Business Property.

**Interest:** Interest on any settlement is generally taxable as "Interest Income" and should be reported on line 2b of Form 1040.

**Punitive Damages:** Punitive damages are taxable and should be reported as "Other Income" on line 21 of Form 1040, Schedule 1, even if the punitive damages were received in a settlement for personal physical injuries or physical sickness.

Some settlement recipients may need to make estimated tax payments if they expect their tax to be $1,000 or more after subtracting credits & withholding. Information on estimated taxes can be found in IRS Publication 505, Tax Withholding and Estimated Tax, and in Form 1040-ES, Estimated Tax for Individuals.

For additional information, see Publication 525, Taxable and Nontaxable Income, visit our website at www.irs.gov, or call toll-free at 1-800-829-1040.

**Important Note about Health Insurance Coverage.** If you, your spouse, or your dependent enrolled in health insurance coverage through the Health Insurance Marketplace and advance payments of the premium tax credit were made to the insurance company, let the Marketplace know if you have a change in circumstances such as a taxable settlement resulting in an increase in your income. Reporting changes allows the Marketplace to adjust the amount of your advance credit payments, which helps prevent large differences between your advance credit payments and the premium tax credit you are allowed and, potentially, an increase in your tax liability. Find out more about the tax-related provisions of the health care law at IRS.gov/aca. See IRS Publication 5121, Need help paying for health insurance premiums? and Publication 5152, Report changes to the Marketplace as they happen.

All of the forms and publications referenced in this publication are available from the IRS at www.irs.gov. Paper copies can be ordered by calling 1-800-829-3676 (1-800-TAX-FORM).

②